LAMB v BUREAU OF PARDONS AND PAROLES

Docket No. 44015. Submitted August 21, 1980, at Lansing.—Decided May 6, 1981.

James D. Lamb was incarcerated in Jackson prison following his conviction as a third-felony offender. Robert R. Crawford, following his conviction as a second-felony offender, was incarcerated in Jackson prison. Subsequent to *Trudeau v Oakland Circuit Judge,* 78 Mich App 111; 259 NW2d 385 (1977), the Michigan Parole Board recomputed the minimum sentence of Lamb and all persons convicted under the habitual offender statutes and incarcerated on the effective date of the *Trudeau* decision. The board notified the inmates that good-time credits were no longer to be applied to minimum sentences. Inmates who had been granted parole prior to the effective date of *Trudeau* (February 4, 1978) were not subject to the parole revocation procedures. Lamb, thereupon, filed an original complaint for mandamus in the Court of Appeals, seeking restroration of his good-time credit. Crawford, sentenced April 18, 1979, was notified by the board that he would not earn any good time to reduce his minimum sentence. Lamb moved to amend his complaint to add Crawford and all others similarly situated as party plaintiffs. The Court of Appeals granted Lamb's motion and appointed the State Appellate Defender Office to represent the plaintiffs. *Held:*

Those inmates sentenced as habitual offenders are entitled to good-time credit, and the Department of Corrections has erroneously interpreted the *Trudeau* decision in denying such credit. A defendant sentenced as a habitual offender may not be paroled prior to the calendar minimum sentence without the

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 13.

60 Am Jur 2d, Penal and Correctional Institutions § 58 *et seq.*

Withdrawal, forfeiture, modification, or denial of good-time allowance to prisoner. 95 ALR2d 1265.

[2] 60 Am Jur 2d, Penal and Correctional Institutions § 62.

[3, 5] 21 Am Jur 2d, Criminal Law § 526.

39 Am Jur 2d, Havitual Criminals and Subsequent Offenders § 13.

approval of the sentencing judge. This rule should apply only to those persons who committed the offenses for which they are subsequently sentenced as habitual offenders on or after February 4, 1978. Those defendants who committed the crimes for which they were sentenced as habitual offenders prior to February 4, 1978, may be paroled at their net minimum sentence without the approval of the sentencing judge. A defendant who commits such a crime on or after February 4, 1978, should be subject to *Trudeau* and should not be paroled prior to the calendar minimum sentence without the approval of the sentencing judge. Lamb, Crawford and all others similarly situated are subject to parole at their net minimum sentences without the approval of their sentencing judges, as in each case their offenses were committed prior to the effective date of *Trudeau*.

Mandamus granted.

1. PRISONS AND PRISONERS — HABITUAL OFFENDERS — GOOD TIME — STATUTES.

All prisoners, including those prisoners sentenced as habitual offenders, are entitled to good-time credit (MCL 800.33[2]; MSA 28.1403[2]).

2. PAROLE — SPECIAL PAROLE — STATUTES.

Parole may be granted to a prisoner at the expiration of his net minimum sentence (the calendear minimum sentence less accumulated good time) and special parole may be granted at any time prior to the net minimum sentence if the sentencing court gives written approval (MCL 791.233[b]; MSA 28.2303[b]).

3. PAROLE — HABITUAL OFFENDERS — MINIMUM TERM OF IMPRISONMENT.

Offenders sentenced under the habitual offender statutes are not eligible for parole before the expiration of the minimum term of imprisonment fixed by the sentencing judge at the time of sentencing without the written approval of the sentencing judge or his successor (MCL 769.12[3]; MSA 28.1084[3]).

4. PAROLE — HABITUAL OFFENDERS — PAROLE BOARD.

A defendant sentenced as a habitual offender, receiving good-time credit, comes under the jurisdiction of the parole board following expiration of his net minimum sentence, at which time the parole board may grant parole subject to the approval of the sentencing judge; the action of the parole board in releasing prisoners is not reviewable if in compliance with law and failure to obtain the prior approval of the sentencing judge in

such a case is not in compliance with law (MCL 791.234[1]; MSA 28.2304[1]).

5. PAROLE — HABITUAL OFFENDERS — MINIMUM TERM OF IMPRISON-
MENT.

A defendant who committed a crime on or after February 4, 1978, the effective date of the decision in *Trudeau v Oakland Circuit Judge,* 78 Mich App 111; 259 NW2d 385 (1977), for which he was subsequently sentenced as a habitual offender, should not be paroled prior to the calendar minimum sentence imposed by the sentencing judge without the approval of the sentencing judge or his successor.

*Nora J. Pasman,* Assistant State Appellate Defender, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for defendant.

Before: J. H. GILLIS, P.J., and N. J. KAUFMAN and R. M. MAHER, JJ.

PER CURIAM. This original mandamus action concerns the impact of the rule set forth in two consolidated cases: *People ex rel Oakland County Prosecuting Attorney v Bureau of Pardons and Paroles* and *Trudeau v Oakland Circuit Judge,* 78 Mich App 111; 259 NW2d 385 (1977), generally known as the *Trudeau* decision. The essential issue before this Court is the reach of *Trudeau.*

Plaintiff James David Lamb pled guilty to a supplemental information charging him as a third-felony offender, MCL 769.11 *et seq.;* MSA 28.1083 *et seq.,* in Detroit Recorder's Court. A sentence of five to ten years imprisonment was imposed. At the commencement of sentence, on April 28, 1977, the Department of Corrections gave plaintiff a "time sheet" indicating that with regular and

special good-time credit, he would be eligible for parole on October 2, 1980.

Thereafter, this Court handed down its decision in *Trudeau,* which was to be effective 60 days from the date of publication of the opinion in the Advance Sheets of Michigan Appeals Reports. *Trudeau, supra,* 119. Accordingly, the rule announced was effective on February 4, 1978.

In complying with the *Trudeau* decision, defendant recomputed the minimum sentence of plaintiff Lamb as well as all persons convicted under the habitual offender statutes and incarcerated on the effective date of the *Trudeau* decision. Defendant notified the inmates that good-time credits were no longer to be applied to minimum sentences. Inmates who had already been granted parole prior to the effective date of *Trudeau* were not subject to the parole revocation procedures. That is, the only habitual offenders to whom *Trudeau* was not applied were those who had been paroled at the "net minimum" or prior to their calendar minimum before February 4, 1978. On February 28, 1979, plaintiff Lamb filed a complaint for writ of mandamus, seeking restoration of his good-time credit.

Plaintiff Robert R. Crawford is presently serving a 6 to 14 year sentence from his nolo contendere plea to a charge of forgery, MCL 750.248; MSA 28.445, and to being a second-felony offender, MCL 769.10; MSA 28.1082. The date of the forgery offense was December 28, 1977. Plaintiff Crawford entered his plea on March 16, 1979, and was sentenced on April 18, 1979. He was credited with 220 days for time previously served. With accumulated good-time computations, plaintiff Crawford's first parole eligibility date would, prior to *Trudeau,* have been July 1, 1981. However, defendant

in this case notified plaintiff Crawford that, in light of the rule set forth in *Trudeau,* he will not earn any good time to reduce his minimum sentence and, thus, will not be eligible for parole until September 5, 1984.

On October 31, 1979, plaintiff Lamb moved to amend his complaint to add Robert R. Crawford and all others similarly situated as party plaintiffs. On December 13, 1979, this Court granted the motion and appointed the State Appellate Defender Office to represent plaintiffs in the instant matter.

We believe that the plaintiffs and the Department of Corrections have fundamentally misconstrued the holding of the *Trudeau* decision. This error has resulted in the adoption of a policy by the Department of Corrections that was unnecessary under *Trudeau* and has further led to doubts about the correctness of that decision.

In general, the defect lies in the fact that the issue in *Trudeau* was not, as many have suggested, whether persons sentenced under the habitual offender statutes[1] are entitled to receive good-time credits on their minimum sentences. Instead:

"The issue is whether a prisoner sentenced under the habitual offender statute may be released on parole after the expiration of his calendar year minimum sentence less good time and special good time without the written consent of the sentencing judge or his successor. In other words, does the parole board obtain jurisdiction to exercise its unfettered discretion at net minimum expiration or at calendar year expiration?" *Trudeau, supra,* 114. (Footnote omitted.)

The Court's holding similarly made no mention of the denial of good-time credits:

[1] MCL 769.10 *et seq.;* MSA 28.1082 *et seq.*

"Applying these canons to the present case leads us to the conclusion that a prisoner sentenced under the habitual offender statute may not be released on parole prior to the expiration of the calendar year minimum sentence imposed by the court without the written consent of the sentencing judge or his successor." *Trudeau, supra,* 119.

As will be more fully demonstrated below, this is not a distinction without a difference.

At issue in *Trudeau* was an apparent conflict between statutory provisions governing the grant of paroles. Under the interpretation of these statutes followed by the Department of Corrections, no distinction was made between regular prisoners and those prisoners who had been sentenced as habitual offenders so far as the grant of a parole was concerned. The Court in *Trudeau* rejected this interpretation and held that the statutes in question did provide for significant differences between regular prisoners and habitual offenders in the grant of paroles. Plaintiffs in the instant case begin by asserting that *Trudeau* was wrongly decided and urge that we reject *Trudeau* in favor of the Department of Corrections prior interpretation.[2] Accordingly, it is logical to begin this analysis with an examination of the basis for the Department's prior interpretation, and the grounds for its rejection in *Trudeau.*

At the outset it must be stated that all prisoners, including those sentenced as habitual offenders, are entitled to good-time credits. MCL 800.33(2); MSA 28.1403(2). A prisoner then be-

---

[2] This Court's order granting plaintiffs' motion for order to show cause directed the parties to address three specific issues. Because these issues were requested to be addressed *"inter alia",* plaintiffs' arguments requesting us to rule contra to *Trudeau* are properly before the Court.

comes eligible for parole pursuant to MCL 791.233(b); MSA 28.2303(b), which provides:

"A parole shall not be granted to a prisoner until the prisoner has served the *minimum term imposed by the court* less allowances for good time or special good time to which the prisoner may be entitled to by statute, except that prisoners shall be eligible for parole prior to the expiration of their *minimum terms of imprisonment* whenever the sentencing judge or the judge's successor in office gives written approval of the parole of the prisoner prior to the expiration of the *minimum terms of imprisonment.*" (Emphasis added.)

This statute has been interpreted to allow the grant of a parole at the "net minimum" sentence (calendar minimum less accumulated good time),[3] and the grant of a "special parole" at any time prior to the net minimum if the sentencing court gives written approval. See *People v Haggitt,* 33 Mich App 95, 102; 189 NW2d 842 (1971), *sentence vacated on other grounds,* 388 Mich 773 (1972). Accordingly, as used in this particular statute, the phrase "minimum term imposed by the court" found in the first part of the statute refers to the calendar minimum sentence, while the phrase "minimum terms of imprisonment" found in the second part of the statute refers to the net minimum sentence.

Special reference to the parole of habitual offenders is found in the habitual offender statutes, which provide in part:

"Offenders sentenced under [the habitual offender statutes] * * * shall not be eligible for parole before the expiration of the *minimum term fixed by the sentenc-*

___

[3] MCL 791.234(1); MSA 28.2304(1) provides that a prisoner is subject to the jurisdiction of the parole board at the expiration of the net minimum sentence.

*ing judge at the time of sentence* without the written approval of the sentencing judge or a successor." MCL 769.12(3); MSA 28.1084(3).[4] (Emphasis added.)

Plaintiffs argue that the phrase: "before the expiration of the minimum term fixed by the sentencing judge at the time of sentence" found in the habitual offender statute must be interpreted in the same manner as the phrase: "prior to the expiration of their minimum terms of imprisonment" found in the second part of MCL 791.233(b); MSA 28.2303(b). Because the phrase "minimum terms of imprisonment" has been interpreted to mean net minimum, plaintiffs argue that the phrase "minimum term fixed by the sentencing judge at the time of sentence" should also be interpreted to mean "net minimum". Based on this same argument the Department of Corrections, prior to *Trudeau,* held that the habitual offender statute requires approval of the sentencing judge only for a special parole, that is, a parole prior to the expiration of the net minimum.

In support of this interpretation is the principle of legislative acquiescence. See *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 520; 158 NW2d 473 (1968). As plaintiffs point out, the language in question from the habitual offender statute was originally enacted at a time when habitual offenders were statutorily restricted in their eligibility for good time. To the extent that no good time could be accumulated by a habitual offender, the language requiring the approval of the sentencing judge of necessity involved only "special" paroles because there was no net mini-

---

[4] The current version of the statute, quoted here, contains some minor changes made after the decision in *Trudeau.* See 1978 PA 77 (effective September 1, 1978). The changes are not material to any of the issues discussed in *Trudeau.*

mum. The limitations on the good time allowed habitual offenders were later removed, and, as noted above, the Department of Corrections interpreted that move as allowing the parole of habitual offenders at the net minimum in the same manner as other prisoners; without the approval of the sentencing judge. The language remaining in the habitual offender statute requiring approval before calendar minimum was interpreted to still refer to "special" parole situations. Plaintiffs now argue that, because the habitual offender statute has been amended several times since the adoption of this interpretation by the Department of Corrections and because no change was made in the material language, the Legislature must be presumed to have acquiesced in the department's interpretation.

Several arguments may also be advanced against the department's interpretation and against the applicability of the legislative acquiescence principle. While good time for habitual offenders was restricted at the time of the enactment of the habitual offender statutes, it was not totally denied second offenders. Accordingly, at least as to second offenders, the requirement of the sentencing judge's approval must have applied in situations other than "special" parole. Because of the indirect nature of the support it provides, the legislative acquiescence principle, even when applicable, is not alone controlling. *Magreta, supra,* 520.[5] In light of this fact, and in light of the clear

---

[5] For the same reasons, we do not believe that the result reached in *Trudeau* was tainted by a failure to accord sufficient weight to the interpretation of the Department of Corrections. While long-standing interpretations of administrative agencies are to be given considerable weight, see *Magreta, supra,* they are not conclusive. While the Court in *Trudeau* may not have been entirely correct in proclaiming the practice is not precedent, it is true that incorrect practice, just as incorrect precedent, should be discarded.

language of the statute, we believe the Court in *Trudeau* was correct in rejecting the department's interpretation. Although the language in the second part of MCL 791.233(b); MSA 28.2303(b) might be considered ambiguous when examined in isolation, comparison with the language in the first part of that section, as well as the language in MCL 791.234(1); MSA 28.2304(1) granting jurisdiction to the parole board at the expiration of the net minimum, goes far in resolving any possible ambiguity. No such ambiguity exists in the language of the habitual offender statute. We are not left to resolve the issue of whether "minimum terms of imprisonment" means the calendar minimum or the net minimum as was true of MCL 791.233(b); MSA 28.2303(b). Instead, we are told in no uncertain terms that the "minimum term" referred to is that "fixed by the sentencing judge at the time of sentence". To the extent that any comparison with MCL 701.233(b); MSA 28.2303(b) is germane in interpreting the language used in the habitual offender statutes, it is much more helpful to look to the first part of the statute rather than the second, as plaintiffs suggest. Since the phrase "minimum term imposed by the court" is much closer to the language used in the habitual offender statutes, and since that phrase clearly refers to calendar minimum, it is more reasonable to conclude that the language used in the habitual offender statutes also refers to the calendar minimum sentence. The concept of approval by the sentencing judge before parole may be granted prior to the calendar minimum is not foreign to the system. Such approval is also specifically required before the parole of most prisoners serving a life sentence:

"A parole shall not be granted a convict so sentenced

and so imprisoned until after a public hearing held in the manner prescribed for pardons and commutations in sections 44(c) to (e) and 45. Notice of the public hearing shall be given to the sentencing judge, or his successor in office, *and parole shall not be granted if the sentencing judge, or his successor in office, files written objections to the granting of the parole,* which written objections shall be made part of the hearing." MCL 791.234(4); MSA 28.2304(4). (Emphasis added.)[6]

It should be clear that the issue in *Trudeau,* which is reexamined here, is only whether the approval of the sentencing judge is needed before a habitual offender is paroled at any point prior to the calendar minimum sentence. For this reason, plaintiffs' arguments concerning the denial of good-time credits are misplaced insofar as they relate to the *Trudeau* decision itself. While the history and language of the good-time statutes require that a defendant sentenced as a habitual offender receive good-time credits on his or her sentence, *Trudeau* did not hold that such credits must be denied. To this extent the Department of Corrections had misconstrued *Trudeau.* Under the good-time statutes, a defendant sentenced as a habitual offender should continue to receive good-time credits on his or her sentence. At the expiration of the net minimum sentence a habitual offender would come under the jurisdiction of the parole board, MCL 791.234(1); MSA 28.2304(1), which could then consider parole. In its discretion the parole board could decide to grant parole, subject to the approval of the sentencing judge. While "[t]he action of the parole board in releasing prisoners shall not be reviewable if in compliance

---

[6] The passage of "Proposal B", MCL 791.233b; MSA 28.2303(3), will affect the parole eligibility of those serving life sentences for crimes committed on or after its effective date. *State Appellate Defender v Director of Elections,* 405 Mich 815 (1979).

with law", MCL 791.234(5); MSA 28.2304(5), failure to obtain such approval before paroling a habitual offender would not be in compliance with the law.

Summarizing to this point, we hold that those sentenced as habitual offenders are entitled to good-time credits pursuant to the statute and that the Department of Corrections has erroneously interpreted *Trudeau* in denying such credits. We further hold that *Trudeau,* properly understood, was correctly decided and that a defendant sentenced as a habitual offender may not be paroled prior to the calendar minimum sentence without the approval of the sentencing judge.

All parties agree that the interests of justice call for this Court, in the exercise of its discretion, to in some manner limit the application of *Trudeau* as it concerns those defendants alredy involved in the criminal justice process when *Trudeau* was decided. The question that remains is what sort of limitation on the *Trudeau* decision is appropriate.

At oral argument, plaintiffs and defendant both suggested that the date of the offense for which the defendant is subsequently sentenced as a habitual offender should be used to distinguish between those to whom *Trudeau* applies and those to whom it does not. We agree. The *Trudeau* decision, while correct, was certainly unanticipated and required a substantial departure from prior practice (even as properly construed). The Supreme Court was recently faced with a similar question in *State Appellate Defender v Director of Elections,* 405 Mich 815 (1979). At issue in that case, *inter alia,* was the extent to which the initiative law (Proposal B), prohibiting parole before the calendar minimum for certain offenses, applied to defendants involved in the criminal justice process prior to the effective date of the new law. The Court held that the new law applied "exclusively

to persons who have committed the certain enumerated offenses on or after its effective date". *Id.* The instant case requires the same treatment. We, therefore, hold that the change announced in *Trudeau* should apply only to those who committed the offenses for which they are subsequently sentenced as habitual offenders on or after February 4, 1978, the effective date of *Trudeau.* Although *Trudeau* did not theoretically work a change in the law, it upset established practice so that, practically speaking, a change did take place. *Cf., Weaver v Graham,* — US —; 101 S Ct 960; 67 L Ed 2d 17 (1981)[7]

To reiterate, *Trudeau* did not require that good time be denied those sentenced as habitual offenders. It merely held that the law placed an additional condition on the parole of habitual offenders prior to the calendar minimum sentence. Thus, all defendants sentenced as habitual offenders are entitled to good time. Those defendants who committed the crimes for which they were sentenced as habitual offenders prior to February 4, 1978, may be paroled at their net minimum sentence without the approval of the sentencing judge. A defendant who commits such a crime on or after February 4, 1978, should be subject to *Trudeau* and should not be paroled prior to the calendar minimum sentence without the approval of the sentencing judge.

Plaintiffs Lamb and Crawford and all others similarly situated are eligible for parole at their net minimum sentences without the approval of their sentencing judges, as in each case their offenses were committed prior to the effective date of *Trudeau.*

Mandamus granted.

---

[7] In light of this limitation on the *Trudeau* decision, it is unnecessary to consider plaintiffs' constitutional challenges to its application.