**Chester Wheeler CAMPBELL, Plaintiff-Appellant,**

v.

**L. Brooks PATTERSON, et al., (No. 81–1116)**

**Frank J. Kelley, et al., (No. 81–1421) Defendants-Appellees.**

**Nos. 81–1116, 81–1421.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1983.

Decided Dec. 29, 1983.

Certiorari Denied March 19, 1984. See 104 S.Ct. 1613.

Vito C. Peraino, argued, Cincinnati, Ohio, for plaintiff-appellant.

John F. Allen, argued, Troy, Mich., for defendants-appellees in No. 81–1116.

Frank J. Kelley, Atty. Gen. of Mich., Thomas L. Casey, Asst. Atty. Gen., argued, Lansing, Mich., for defendants-appellees in No. 81–1421.

Before JONES and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

This is a consolidated appeal by Chester Wheeler Campbell (Campbell) from two separate decisions below which found that no violation of Campbell's civil rights were committed by the Michigan Attorney General, state prison officials and county prosecutors who cancelled Campbell's scheduled parole release for reasons later shown to be erroneous. The trial court in No. 81–1116 (hereinafter *Patterson*) granted summary judgment in favor of the Oakland County Prosecutor and two assistants concluding that they correctly applied Michigan law as to Campbell's eligibility for parole and so deprived Campbell of no rights. In No. 81–1421 (hereinafter *Kelley*), the court dismissed an action against the Attorney General and prison officials for reasons of immunity.

The salient facts of the matter are not disputed. Campbell was informed on January 22, 1980 that he was eligible for parole from the Southern Michigan Prison on February 1, 1980 as the result of "good time" and "special good time" credits. Campbell was then serving concurrent sentences for firearms and drug violations which sentences had been enhanced under Michigan's Habitual Offender Statute because Campbell had a previous felony conviction. M.C.L.A. § 769.12.

In January of 1980, news of Campbell's impending parole was unofficially communicated to an assistant Oakland County prosecutor. The assistant, together with another assistant, discussed the parole as it related to M.C.L.A. § 769.12(3) which states, in part, that habitual offenders may not be paroled "before the minimum term fixed by the sentencing judge," which term in Campbell's case, absent good time credits, would not expire until January 23, 1982. At the time of the assistant prosecutors' discussions, Michigan appellate authority existed which held that good time credits could not reduce the minimum term of habitual offenders. *People ex rel. Oakland County Prosecuting Attorney v. Bureau of Pardons and Paroles,* and *Trudeau v. Oakland Circuit Judge,* 78 Mich.App. 111, 259 N.W.2d 385 (1977).

Accordingly, the assistant prosecutors contacted both the prison officials and the Michigan Attorney General seeking information as to Campbell's status in light of the aforementioned precedent. The prison officials thereupon formally requested an opinion from the Attorney General, who responded in an opinion unfavorable to Campbell on the day before this scheduled

release. This parole was cancelled and, in May, 1980, Campbell filed the actions presently at bar asserting that the various state officials here involved had conspired to deprive him of his right to a parole.

Initially, the suit against the prosecutor and his assistants was terminated by a grant of summary judgment in favor of the officials. As noted, the district court, in accepting a magistrate's report, found that Campbell was not entitled to credits in reduction of his minimum sentence as a matter of Michigan law and therefore the prosecutors deprived Campbell of no right. However, subsequent to this decision, but prior to consideration of the suit against the Attorney General and the prison authorities, the Michigan Court of Appeals ruled that the prohibition of sentence reduction in cases of habitual offenders applied only to those offenders whose crime was committed subsequent to the date of the original appellate pronouncement in *Trudeau, supra. Lamb v. Bureau of Pardons and Paroles,* 106 Mich.App. 175, 307 N.W.2d 754 (1981). Thus, Campbell had been entitled to parole in February, 1981.

Subsequent to *Lamb,* the action against the Attorney General and the prison administrators came before the district court. In that proceeding, the trial judge acknowledged that the construction of Michigan law applied by the state officers to Campbell had been incorrect, but dismissed the suit because the Attorney General, and the prison authorities required to follow his official opinions of state law, were entitled to absolute immunity. The present appeals ensued.

Initially, it is settled that judicial immunity, which has historically protected judges acting in their official capacity, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), also attaches to public officials who perform quasi-judicial duties. *Johnson v. Granholm,* 662 F.2d 449 (6th Cir.1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). Moreover, this immunity is not forfeit if the action taken was erroneous, malicious or exceeded authority. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

In Michigan, the Attorney General is obligated by statute to render opinions interpreting law at the request of state agencies or officials. M.C.L.A. § 14.32. Moreover, such opinions are binding upon the state department or agent which requested them. *See People v. Penn,* 102 Mich.App. 731, 302 N.W.2d 298 (1981). Thus, the district judge correctly ascribed absolute immunity to the Attorney General and the prison officials in this case.

The immunity analysis, however, is not dispositive of the case involving the prosecutor and his assistants. While it is settled that prosecutors are entitled to absolute immunity when initiating and pursuing a criminal prosecution, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), it is also clear that prosecutorial functions not "intimately associated with the judicial phase of the criminal process," 424 U.S. at 430, 96 S.Ct. at 995, obviate the supporting rationale for absolute immunity in favor of qualified good-faith immunity. *Id.* at 431, n. 33, 96 S.Ct. at 995, n. 33. Inasmuch as qualified good-faith immunity is an affirmative defense which must be asserted below, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980), and inasmuch as the matter involving the prosecutors was summarily resolved upon grounds, later shown to be erroneous, which made unnecessary a defense of immunity, it is appropriate to remand *Patterson* to the district court for reconsideration of the motion for summary judgment. *See Wolfel v. Sanborn,* 691 F.2d 270 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 751, 74 L.Ed.2d 969 (1983).

Accordingly, the decision of the district court in No. 81–1421 is hereby AFFIRMED, and No. 81–1116 is REMANDED to the district court for further proceedings consistent with this opinion.