**Gary HARRIS, Plaintiff,**

v.

**Dennis E. MUCHNICKI, Defendant.**

**No. 95 cv 1654.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 29, 1996.

Daniel S. Kalish, Richard Lillie & Assoc., Cleveland, OH, for plaintiff.

Jack W. Decker, Office of Attorney General, Columbus, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon Defendant's "Motion to Dismiss and/or for Qualified Immunity" (Document # 4). Defendant's motion is hereby GRANTED.

Plaintiff filed his complaint on July 28, 1995, claiming relief under various federal and state statutes, unidentified local regulations and the United States and Ohio Constitutions. Plaintiff's claims stem from a state grand jury investigation of Plaintiff which occurred between September of 1991 and May of 1992. The grand jury investigation apparently arose out of Ohio Environmental Protection Agency ("EPA") concerns regarding a building with which Plaintiff Harris was associated. Defendant Muchnicki, at the time an Assistant Attorney General for the State of Ohio, conducted this grand jury investigation. In May of 1992, the grand jury handed down an indictment which charged Harris, among others, with various EPA violations. Plaintiff was arrested and pleaded no contest to the charges. Sometime during these events, the Internal Revenue Service ("IRS") conducted its own investigation of Harris, with the aid of a federal grand jury. Defendant Muchnicki apparently released the state grand jury minutes to the U.S. Department of Justice for use in the federal grand jury proceedings in January of 1993.

The four causes of action which Plaintiff has named amount to two general assertions. First, Plaintiff claims that Muchnicki "was operating without authority" in conducting the investigation and the ensuing prosecution, in that Defendant had "not obtain[ed] an appointment to act as a prosecutor." (Complaint at 3–4). Second, Plaintiff contends that Defendant "without authorization and in violation of federal and state law released the [state grand jury] transcripts to the U.S. Attorney." (Complaint at 4).

Plaintiff lists his claims for relief in the complaint as follows. The first cause of action alleged "financial and psychological damages" due to a deficiency in Defendant's authority for lack of appointment under 28

U.S.C. § 515. (Complaint at 7). The second and third causes of action alleged a due process violation pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment, the Ohio Constitution, and other state and locals provisions, resulting from Defendant's alleged improper release of the state grand jury minutes. The fourth claim alleged a due process violation under 42 U.S.C. § 1983 for Defendant's failure to obtain an order designating him as special prosecutor in Plaintiff's state case.

In response to Plaintiff's complaint, Defendant filed the above-named Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). In his Motion, Defendant raises two affirmative defenses to Plaintiff's claims. First, Defendant contends that Plaintiff's claim is time-barred; he claims that Plaintiff exceeded the two-year statute of limitations apparently applicable to claims brought in Ohio under 42 U.S.C. § 1983. Second, Defendant asserts prosecutorial immunity for each of the actions alleged in the complaint. Defendant declares that he is absolutely immune, or in the alternative qualifiedly immune, from civil liability in this case. The Court rejects Defendant's first affirmative defense, but finds meritorious Defendant's second affirmative defense. As such, the Motion to Dismiss is granted on this second basis only.

### Defendant's Motion to Dismiss

■ On a Motion to Dismiss brought under Fed.R.Civ.P. 12(b)(6), this Court's inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808 (3rd Cir.1990).

■ In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Jones v. City of Carlisle, Ky.,* 3 F.3d 945, 947 (6th Cir.1993) (quoting *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F.Supp. 971, 975 (S.D.Ohio 1993).

### Statute of Limitations under 42 U.S.C. § 1983

As stated, Defendant asserts that Plaintiff has brought his case after the expiration of the applicable statute of limitations. For the following reasons, Defendant's Motion, as premised upon this first defense, is denied.

■ The applicable statute of limitations for § 1983 actions differs from state to state. The United States Supreme Court has held that the courts of each state are to determine the appropriate amount of time within which such a claim must be brought. The Court ruled that,

> Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law. When such a void occurs, this Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action. Limitation borrowing was adopted for civil rights actions filed in federal court as early as 1914....

*Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980) (footnote omitted) (citing *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914)), *see also Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

■ Consistent with the Supreme Court's reasoning, the Sixth Circuit has found that personal injury causes of action are analogous to § 1983 claims, for statute of limitations purposes. Therefore, the Circuit Court has "borrowed" that limitations period for use in § 1983 actions. *See Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989). In *Browning,* the Sixth Circuit unanimously held that the two-year statute of limitations for personal injury actions designated in Ohio Revised Code § 2305.10 governs § 1983 actions brought in Ohio courts. *Id.* at 992, *accord Kurinsky v. USA,* 33 F.3d 594, 599

(6th Cir.1994). Following the Sixth Circuit's mandate, this Court holds that the appropriate statute of limitations for Plaintiff's § 1983 claims is two years.

■ The central issue under the facts of the instant case is when the two-year statute of limitations began to accrue. Defendant asserts that the limitations period started to run in January of 1993, when the last of the alleged injury-causing events described in the complaint occurred. Therefore, because Plaintiff filed this suit in July of 1995, his claims are time-barred. Plaintiff seems to agree that the limitation period has expired, but argues that it should be tolled. Plaintiff contends that his claims accrued only in early 1995, when he discovered that he had a cause of action.

■ Defendant properly cites the dispositive case in this area, *Sevier v. Turner*, 742 F.2d 262 (6th Cir.1984). In *Sevier*, the Court held that,

[a]lthough state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run. *The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.*

*Id.* at 272–73 (citations omitted) (emphasis added). The Court explained that a plaintiff has "reason to know of his injury" when, through the exercise of due diligence, he should have discovered it. *Id.* at 273. More recently, in *Devore v. Champion International Corporation*, the Court further elaborated on the issue of tolling. No. 93–6329, 1995 WL 68772 (6th Cir. Feb. 17, 1995). It held that "'the statute [of limitations] is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and as a reasonable person is not put on inquiry.'" *Id.* at *1 (quoting *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn.1983)).

This Court has carefully scrutinized the motion papers of both parties. Based upon the standard set out above in *Sevier*, the principal inquiry is whether Plaintiff actually knew or had reason to know of the injuries alleged herein. Neither side has claimed that Plaintiff had actual knowledge of his alleged injuries at the time of their occurrence; therefore the analysis below focuses on whether Plaintiff *should have known* of the alleged injuries at the time of their occurrence.

Because only Defendant's motion papers address this definitive issue, Defendant's arguments are considered below. This Court finds Defendant's tolling argument to be attenuated and incomplete. Defendant has not successfully persuaded this Court that Plaintiff was "put on inquiry" under these circumstances, sufficient to deny tolling. *Devore v. Champion International Corporation*, No. 93–6329, 1995 WL 68772, at *1 (6th Cir. Feb. 17, 1995). First, Defendant's assertion that Plaintiff should have known that Defendant was not initially appointed is untenable. Defendant supports his contention with an unusual argument; Defendant really argues whether Plaintiff *could have discovered* the alleged lack of authority, not whether Plaintiff *should have known* of the supposed wrong. This is not the Sixth Circuit standard under *Sevier*. In any event, that Plaintiff should have verified the authority under which Defendant was acting at the time of the supposed violations is as burdensome a requirement as it is unrealistic. Second, the claim that Plaintiff should have known that Defendant turned over the grand jury minutes is similarly untenable. As above, Defendant seems to focus on Plaintiff's ability to uncover such an occurrence, rather than his responsibility to do so. As stated, this is not the standard set forth in *Sevier* to determine tolling. Third, Defendant's statute of limitations argument failed to address all of the claims in the complaint. Only three of Plaintiff's four causes of action arise under § 1983; his first claim is based upon 28 U.S.C. § 515. Therefore, even if Defendant's statute of limitations defense would have proved meritorious, it would not have disposed of the case.

Unpersuaded by Defendant's first affirmative defense, this Court has determined that the statute of limitations began to run in early 1995 when Plaintiff discovered his alleged injury. This Court therefore proceeds

to Defendant's second affirmative defense, immunity.

### *Prosecutorial Immunity*

Defendant claims that he is absolutely immune from liability in this case, or in the alternative, that he is qualifiedly immune. For the following reasons, this Court finds that Defendant is absolutely immune from suit concerning all of Plaintiff's causes of action. Accordingly, Defendant's Motion, as based on this second defense, is GRANTED.

■ The United States Supreme Court first recognized absolute prosecutorial immunity in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler,* the Supreme Court held that,

> [a] state prosecuting attorney who … acted within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the State's case, is absolutely immune from a civil damages suit under § 1983 for alleged deprivations of the accused constitutional rights.

*Id.* The policy reasons behind the Court's decision go to the heart of the judicial process. The Court reasoned that prosecutors must discharge their duties "vigorous[ly] and fearless[ly]," in that their unencumbered performance is "essential to the proper functioning of the criminal justice system." *Id.* Among its considerations, the Court included

> the concern that harassment by unfounded litigation would cause a deflection of the prosecutors energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Id.* at 423, 96 S.Ct. at 991. The Court held that the above considerations, which underlie the common law rule, indeed "countenance absolute immunity under § 1983." *Id.* at 424, 96 S.Ct. at 992. The Court in its decision acknowledged the disadvantage of providing prosecutors with an absolute shelter from liability: "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* However, the Court

held that the "alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.*

The solid common law foundation for absolute prosecutorial immunity, developed by numerous Courts of Appeals, formed the basis for the Supreme Court's decision. The Court recognized that, "[t]hese [circuit] courts sometimes have described the prosecutor's immunity as a form of 'quasi-judicial' immunity and referred to it as derivative of the immunity of judges recognized in *Pierson v. Ray* [386 U.S. 547, 559, 87 S.Ct. 1213, 1220, 18 L.Ed.2d 288 (1967) ]." *Id.* at 420, 96 S.Ct. at 990 (citation omitted). The Court found that a prosecutor's quasi-judicial functions are those activities "intimately associated with the judicial phase of the criminal process," or those of an "advocate." *Id.* at 430–31, 96 S.Ct. at 995. The *Imbler* decision did not address existing case law which denied absolute immunity to prosecutors for their investigative or administrative functions. *See Joseph v. Patterson,* 795 F.2d 549 (6th Cir.1986).

■ The functional approach to immunity for government officials introduced in the *Imbler* case was solidified in later Supreme Court decisions. *See, e.g. Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Westfall v. Erwin,* 484 U.S. 292, 296 n. 3, 108 S.Ct. 580, 583 n. 3, 98 L.Ed.2d 619 (1988); *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555 (1988); *Malley v. Briggs,* 475 U.S. 335, 342–43, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986); *Mitchell v. Forsyth,* 472 U.S. 511, 520–23, 105 S.Ct. 2806, 2812–14, 86 L.Ed.2d 411 (1985); *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978). The functional approach requires a court to examine the " 'nature of the function performed, not the identity of the actor who performed it,' " to determine the extent, if any, of liability. *Buckley v. Fitzsimmons,* 509 U.S. at 268–69, 113 S.Ct. at 2613 (citing *Forrester v. White,* 484 U.S. at

229, 108 S.Ct. at 545). Accordingly, the Sixth Circuit has held that,

> the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial process. This so-called functional analysis cannot be conducted mechanistically, but must occur with an eye toward the common law and public policy underpinnings of absolute immunity.

*Joseph v. Patterson,* 795 F.2d 549, 554–55 (6th Cir.1986), *accord Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir.1993).

■ Employing the functional approach to immunity, these later Supreme Court decisions specified the differing levels of immunity that the Court in *Imbler* had left undecided. In those subsequent cases, the Court ruled that the prosecutor fulfilling a quasi-judicial or advocacy role is to receive absolute immunity, and the prosecutor executing administrative or investigative duties will only receive qualified immunity. It also held that the burden for proving which type of immunity is appropriate in a given case lies with the official asserting the defense. *Burns v. Reed,* 500 U.S. at 486, 111 S.Ct. at 1939 (citations omitted).

■ The instant case presents two contested functions of Defendant subject to immunity examination. The first function is Defendant's initiation of the criminal case against Plaintiff by presenting evidence to a grand jury. The second function is Defendant's disclosure of the state grand jury minutes to federal prosecutors. With regard to both activities, this Court finds that Defendant is absolutely immune. Because these two functions comprise the substance of Plaintiff's four claims, all of Plaintiff's claims fail. Accordingly, any substantive examination of these causes of action is here unnecessary.

A prosecutor's function in assembling and presenting evidence before a grand jury is one of the first steps in the prosecution of a criminal defendant. As held in *Imbler v. Pachtman,* 424 U.S. 409, 424, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976), a state prosecutor has absolute immunity in initiating a criminal prosecution. *Accord Buckley v.*

*Fitzsimmons,* 509 U.S. 259, 269–71, 113 S.Ct. 2606, 2614, 125 L.Ed.2d 209 (1993), *Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986). Accordingly, this Court finds Defendant absolutely immune from suit for this function.

■ Defendant's immunity for revealing the state grand jury minutes, though not as well-precedented as that for initiating a prosecution, is also absolute. The reasoning of the Supreme Court and the common law justifications for absolute immunity necessitate such a finding. Independent research has revealed no case in our circuit, nor in any other circuit, with the precise issue before this Court. The two closest decisions, from the Second and Third Circuits respectively, which address prosecutorial immunity in the context of grand jury information are not dispositive, either factually or legally. *See, e.g., Powers v. Coe,* 728 F.2d 97 (2d Cir.1984), *Rose v. Bartle,* 871 F.2d 331 (3rd Cir.1989). In the *Powers* and *Rose* cases, the prosecutor leaked information to the press during the course of the grand jury's investigation. Both Courts of Appeals focused on the recipient of the grand jury material; the Courts held that dealing with the press in these instances was an administrative rather than quasi-judicial function of the prosecutor. Therefore they ruled that the prosecutors were not to receive absolute immunity for their actions. *Rose v. Bartle,* 871 F.2d at 346 (citing *Powers v. Coe,* 728 F.2d at 103). The facts of the instant case are wholly distinct. Defendant did not deliver the grand jury transcripts to the press. Rather, he shared with other prosecutors, in order to provide assistance in the continuing investigation and prosecution of Plaintiff. Therefore, this Court finds that Defendant's activities are "intimately associated with the criminal phase of the judicial process." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995. Moreover, this Court holds that Defendant was "pursuing a criminal prosecution" in disclosing the transcripts to the Department of Justice. *Id.* at 409, 96 S.Ct. at 985, *accord Campbell v. Patterson,* 724 F.2d 41, 43 (6th Cir.1983). Accordingly, Defendant is absolutely immune from civil liability for disclosing the state grand jury minutes.

## Conclusion

For the foregoing reasons, Defendant is absolutely immune from liability in this case. Therefore, Defendant's "Motion to Dismiss and/or for Qualified Immunity" (document # 4), as based upon this affirmative defense, is hereby GRANTED.

IT IS SO ORDERED.