Arthur Brennan **MALLOY, II**, Petitioner,

v.

Thomas **PURVIS**, et al., Respondents.

No. 81–7314.

United States Court of Appeals, Eleventh Circuit.

July 29, 1982.

Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Grover E. Asmus, II, Mobile, Ala., (Court-appointed), for petitioner.

Elizabeth Ann Evans, Asst. Atty. Gen., Montgomery, Ala., for respondents.

Before WISDOM *, RONEY and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

We must determine whether the blemish on one's record resulting from one conviction is enough of a collateral consequence to prevent a habeas corpus petition from being moot, where the petitioner is not in custody, and where the petitioner has multiple convictions. Finding that such a blemish is not a collateral consequence, we affirm.

Arthur Brennan Malloy, II, appeals the dismissal of his habeas corpus petition, 28 U.S.C.A. § 2254, which alleged that his 1977 conviction for forgery was unconstitutionally imposed. In 1975, Mobile County, Alabama, authorities arrested and arraigned Malloy on forgery charges. While out on bail pending trial, he was imprisoned for a parole violation. While imprisoned, the sheriff of Mobile County issued a detainer to the authorities holding Malloy requesting that Malloy be turned over to the sheriff for trial on the forgery charge upon completion of the imprisonment for the parole

violation. On March 27, 1976, the day when Malloy was due to be released from custody under the parole violation charge, prison officials and Malloy attempted to honor the detainer. Their efforts were rebuffed by officials from the sheriff's office who indicated that Malloy was not to be detained. Accordingly, the prison officials released Malloy from custody without the detainer being served. Later, he was incarcerated in another Alabama penal institution on charges completely unrelated to the 1975 forgery charge. During this period of confinement, the detainer issued by the Mobile County Sheriff's Office was served. On March 29, 1977, Malloy was tried for forgery, found guilty, and sentenced to four years imprisonment.

While serving the four-year sentence, Malloy filed this habeas petition in the United States District Court for the Southern District of Alabama, arguing that his conviction was illegal because of the Mobile County Sheriff's failure to act on the detainer. The respondents moved to dismiss the action and the district court, considering the motions to dismiss as motions for summary judgment, entered summary judgment in their favor and dismissed Malloy's petition on the grounds that the material facts were essentially undisputed and that Malloy's claim was frivolous. Malloy appealed this judgment and on June 11, 1979, the former Fifth Circuit summarily vacated the judgment of the district court and remanded the case for determination on the merits. During pendency of the appeal to the former Fifth Circuit, the court placed Malloy on parole, and on November 18, 1979, he was discharged from sentence and parole with respect to the conviction under attack in this proceeding. In May, 1980, the respondents filed another motion to dismiss asserting that Malloy's release from sentence and parole in November, 1979, rendered his petition moot. The trial court referred the matter to a magistrate who recommended that the petition be

---

* Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

738

dismissed because the forgery conviction added no collateral consequences to those already burdening Malloy as a result of his prior convictions for offenses involving moral turpitude. The district court adopted the recommendation of the magistrate and this appeal followed.

 Our task is to decide whether a habeas corpus petitioner's unconditional release from state custody renders the petition moot where no consequences collateral to the conviction under attack cause the petitioner to suffer the loss of any civil liberties not previously deprived of as a result of prior convictions. Unlike the circumstances normally presented in a case of this nature, the substantial issue here is not whether Malloy has satisfied the "in custody" requirement necessary to establish federal jurisdiction under section 2254(d). Cf. Sinclair v. Blackburn, 599 F.2d 673 (5th Cir. 1979) (in custody requirement, not mootness, is the substantial issue in such cases). At the time of the petition's filing, Malloy was confined in the Staton Correctional Center, Elmore, Alabama. Thus, the statutory scheme has been complied with and Malloy's unconditional release from custody while his appeal of the district court's first dismissal was pending does not defeat the jurisdiction previously established. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). We focus our concern, therefore, on the question of mootness.[1]

Although he has served the sentence and has been unconditionally released from custody, Malloy contends that the forgery conviction now challenged constitutes a consequence to him in the form of a blemish upon his record. Conceding that no civil liberties not already forfeited as a result of prior convictions will be reinstated should this conviction be overturned, Malloy, nevertheless, charges that the state has

failed to negate the existence of any possibility that collateral consequences may adhere to the conviction under attack. The state counters this argument by asserting that no collateral consequences were cited because none were perceived.

Concerned primarily with the in custody jurisdictional issue, the Supreme Court in Carafas held that in a habeas corpus proceeding, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." 391 U.S. at 238, 88 S.Ct. at 1560. The Court did, however, preliminarily address the question of mootness and its effect on the power of the federal courts to grant relief. In declaring the case not moot, the Court discussed the consequences still burdening Carafas as a result of his conviction. "In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." 391 U.S. at 237, 88 S.Ct. at 1559 (footnotes omitted). These civil penalties furnished Carafas with "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him" and, as such, prevented the case from becoming moot. 391 U.S. at 237, 88 S.Ct. at 1559, quoting Fiswick v. United States, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946).

According to Malloy, the blemish on one's record caused by a conviction is enough of a collateral consequence to prevent a habeas corpus petition from becoming moot where the petitioner is no longer under custodial restraint. If this were the case, mootness would never be an issue in the resolution of habeas petitions because the mere fact of

1. Although both mootness and the "in custody" requirement of section 2254(d) relate to federal subject-matter jurisdiction, they are analytically distinct issues requiring different treatment. Escobedo v. Estelle, 655 F.2d 613, 615 n.5 (5th Cir. 1981). As framed by the Seventh Circuit in Harrison v. Indiana, 597 F.2d 115, 117–18 (7th Cir. 1979):

Although the issue of mootness is often mistaken for a jurisdictional question, within the context of the questions raised by this case, jurisdiction is a matter of satisfying the statutory 'in custody' requirement, whereas mootness is a question of whether there is any relief the court can grant once it has determined that it indeed has jurisdiction.

the conviction would always keep the petition alive. Taken to the extreme, this argument would call for treatment on the merits even in those instances where the petitioner was still allowed to vote or engage in certain professions, or where the conviction could not be used for enhancement purposes. Such a rule would require us to read the language of *Carafas* mentioned above as merely surplusage or dicta. We refuse to do so. If the Supreme Court desired to hold that a conviction in and of itself constituted a collateral consequence, the circumstances in *Carafas* presented an ample opportunity for expressing such a rule. Because it did not, however, we refuse to sanction a rule that would effectively abrogate the meaning and purpose underlying the requirement of proving collateral consequences.

Inasmuch as his multiple offender status has already deprived him of all those civil liberties he would have otherwise lost as a result of the challenged conviction, Malloy concedes that he cannot point to any actual harms presently flowing from his forgery conviction. He claims, however, that he need not prove the existence of actual legal consequences, but that the state has the burden of establishing the lack of any possibility of collateral consequences to Malloy stemming from the forgery conviction. Absent such a demonstration he contends, the case is not moot. He finds support for this argument in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Exercising appellate jurisdiction under 28 U.S.C.A. § 1257, the Supreme Court in *Sibron* reviewed a conviction for possession of heroin attacked on the ground that the New York statute under which the appellant was arrested was unconstitutional. Before addressing the merits of the claim, the Court considered whether the case was moot upon discovering at oral argument that the appellant had completed his sentence and was no longer incarcerated. Disregarding the appellant's multiple offender status, the Court stated the test to be that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S.Ct. at 1900.

The types of civil liberties to which *Carafas* refers are similarly applicable in Alabama. Thus, Malloy cannot vote, Ala.Const. art. VIII § 182; he cannot serve as a juror, Ala.Code Ann. § 12–16–60(a)(4); he cannot serve as an official of a labor union, 29 U.S.C.A. § 504; he cannot obtain a license in various professions, *see, e.g.*, Ala.Code Ann. § 34–24–35 (physician's license revokable upon conviction of felony); and he is subject to enhanced sentencing if, in the future, he is convicted of another crime.[2] Ala.Code Ann. § 13A–5–9. Malloy contends, however, that the language from *Sibron* allows him to assert that he may seek a pardon for his offenses from the governor or seek financial aid for his family from the state government, and this forgery conviction could be considered in determining whether government officials would grant either of these requests. These are not the types of civil penalties discussed in *Carafas* and our reading of *Sibron* is considerably narrower than Malloy's. We interpret *Sibron* simply to mean that the state must show that no possibilities exist for the imposition of collateral legal consequences on the basis of the challenged conviction. Because all the civil liberties cited by Malloy were previously forfeited, the state had nothing to prove. Stated differently, it would have been impossible for the state to show that no possibilities of any collateral legal consequences would attach to Malloy as a result of his forgery conviction because the deprivation of the civil liberties noted, similar to the ones cited in *Carafas*, had previously occurred. Moreover, the Supreme Court has again addressed this topic in the context of

2. We are informed by counsel that on March 31, 1982, following a conviction for robbery, Malloy was sentenced to life imprisonment without possibility of parole under the Alabama Habitual Offender's Act, Ala.Code Ann.

§ 13A–5–9. Counsel further indicates that the forgery conviction here under attack was not one of the prior offenses relied upon by the sentencing court for enhancement purposes in issuing Malloy's life sentence.

a section 2254 petition alleging that the failure of the trial court to advise the petitioners of a mandatory parole requirement before accepting their guilty pleas deprived them of due process of law. In *Lane v. Williams,* —— U.S. ——, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the petitioners sought specific enforcement of a plea bargain agreement by having the mandatory parole terms eliminated from their sentences. Because the parole terms had expired and the petitioners were no longer subject to any direct restraint as a result of the parole terms, the Supreme Court held the case moot. The Court found the rule of *Carafas* and *Sibron* inapplicable to the situation in *Lane,* noting that *Carafas* was concerned with existing civil disabilities as a result of the petitioner's conviction. "Collateral review of a final judgment is not an endeavor to be undertaken lightly. It is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid." *Lane,* —— U.S. at —— n.13, 102 S.Ct. at 1327 n.13, 71 L.Ed.2d at 516 n.13.

For the reasons discussed above, we affirm the order of the district court dismissing Malloy's petition.

AFFIRMED.

WISDOM, Circuit Judge, specially concurring:

I concur in the result reached by the Court, because, assuming that we can take judicial notice of the facts stated in footnote 2 of the majority opinion, the petitioner is now serving a life sentence without possibility of parole.

I read *Sibron v. New York,* 1968, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, as holding that a defendant's prior convictions are irrelevant to the question of collateral consequences. In *Sibron* the Court said:

> Moreover we see no relevance in the fact that Sibron is a multiple offender. . . . It is impossible for this Court to say at what point the number of convictions on a man's record renders his reputation irredeemable. And even if we believed that an individual had reached that point,

it would be impossible for us to say that he had no interest in beginning the process of redemption with the particular case sought to be adjudicated.

*Sibron* at 55–57, 88 S.Ct. at 1898–1899.

*Sibron* involved completion of a sentence pending direct appeal of a conviction. In *Harrison v. Indiana,* 1979, 597 F.2d 115, however, the Court of Appeals for the Seventh Circuit applied *Sibron* to habeas corpus proceedings. The court observed that "multiple offenses may affect [the] petitioner's credibility, his eligibility for parole, and may subject him to harsher sentencing if in the future he is in trouble with the law". 597 F.2d 118.

A blemish on an already blemished reputation is still a blemish, usually with collateral consequences.