**Gilbert Manly SPRING,**
**Petitioner-Appellee,**

v.

**Harry CALDWELL, Chief of Police, City of Houston, et al.,**
**Respondents-Appellants,**

**State of Texas, Intervenor-Appellant.**

No. 81–2357.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1982.

Rehearing and Rehearing En Banc
Denied Jan. 10, 1983.

genital abnormalities, small head, mongolism, or missing organs, depending on the cell that

has been affected."

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for State of Texas.

John H. Helm, Asst. City Atty., Legal Dept., Houston, Tex., for Caldwell & Stanley.

Schaffer, Lambright & Ramsey, Wendell A. Odom, Jr., Nelson & Mallett, J. Patrick Wiseman, Larry Sauer, Houston, Tex., for petitioner-appellee.

Michael A. Maness, Houston, Tex., amicus curiae for ACLU.

Appeals from the United States District Court for the Southern District of Texas.

Before THORNBERRY, REAVLEY and GARWOOD, Circuit Judges.

THORNBERRY, Circuit Judge:

I.   Introduction

This is an appeal by Caldwell, the Houston Chief of Police and defendant below, and the State of Texas, intervenor below, from a judgment arising out of a federal habeas corpus proceeding brought under 28 U.S.C. §§ 2241 and 2254 (1976). The district court reached the merits, and held that section 38.02 of the Texas Penal Code, the "Failure to Identify" law, was unconstitutional on its face. 516 F.Supp. 1223, 1231 (S.D.Tex.1981). Caldwell and the State of Texas raise several points of error on their appeal. However, because we hold that the district court did not have subject matter jurisdiction in the case, we reverse without reaching the merits.

II.   Facts and Disposition Below

On November 13, 1975, two Houston police officers set up surveillance in an area known to be frequented by prostitutes. They observed a known prostitute approach and speak to an unknown male who shook his head and walked away. The officers then observed her approach defendant Spring and converse with him, whereupon they approached the two. The officers requested Spring to identify himself. When Spring refused to do so, the officers placed him under arrest for violating the Texas

"Failure to Identify" law, Texas Penal Code Ann. § 38.02 (Vernon 1974).[1]

Spring was tried in Houston Municipal Court, found guilty, and sentenced to a $100 fine. Various appeals within the state court system resulted in affirmance of the judgment of the Municipal Court.[2]

Following affirmance of its judgment by the higher state courts, the Municipal Court demanded payment of the fine. When Spring refused to comply, the court issued a "Capias pro Fine," or a warrant for arrest for contempt of court, to compel payment of the fine. The federal district court stayed execution of the capias on December 17, 1979, pending resolution of Spring's federal habeas petition.

Following a trial, the district court granted the writ, set aside Spring's conviction, vacated Spring's sentence, and declared § 38.02 of the Texas Penal Code unconstitutional.

On appeal, Caldwell and the State of Texas raise various points of error. In view of our disposition of the case, we need only consider the jurisdictional issue. We reverse and remand with instructions to dismiss the habeas petition.

### III. Analysis

■ The question presented for our decision is a narrow one: whether a warrant for arrest, issued as a result of a willful refusal to pay a fine, fulfills the "in custody" requirement for federal habeas jurisdiction in a case challenging the constitutionality of a statute that only imposes a fine. The concept of custody has been relaxed considerably by the Supreme Court, *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), *Carafas v. Lavallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), and it is no longer necessary for a person to be under physical constraints in order to obtain habeas relief. Nonetheless, the custody requirement has not lost all meaning. Thus, for example, habeas corpus cannot be invoked to challenge a conviction that resulted in a cash fine only against the defendant. 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4262, at 615. In our circuit, the rule has been stated in *Westberry v. Keith,* 434 F.2d 623 (5th Cir.1970). In *Keith,* defendant was convicted of failure to yield the right of way, and sentenced to a $250 fine and revocation of her driver's license. After paying the fine and surrendering her driver's license, defendant sought federal habeas relief. We held that the Supreme Court cases enlarging the concept of custody

> involved petitioners who applied for the writ while either incarcerated under or paroled from *prison sentences.* We can find no decision by the Supreme Court nor by this circuit which would allow federal courts to take habeas corpus jurisdiction under § 2254 when the petitioner has applied for the writ after suffering a fine and the revocation of the right to drive on the state's highways. To allow such circumstances to form the basis of a claim that appellant was in custody would go far beyond that degree of confinement found sufficient in *Carafas* and *Jones,* supra.

434 F.2d at 624–25 (emphasis added).

All the circuit courts that have addressed the issue of federal habeas jurisdiction in fine-only cases have reached an identical

---

**1.** Section 38.02 provides as follows:
FAILURE TO IDENTIFY AS WITNESS
(a) A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information.
(b) An offense under this section is a Class C misdemeanor.
The maximum penalty for violation of § 38.02 is a $200 fine. No imprisonment is authorized because justice and municipal courts, which routinely hear cases under § 38.02, have no jurisdiction to imprison. Practice Commentary, Tex.Penal Code Ann. § 12.23 (Vernon 1974).

**2.** For a detailed analysis of the various appeals in the state court system, see the district court's opinion, 516 F.Supp. 1223, 1225–26. Because we need not decide the exhaustion of state remedies issue, we do not examine those appeals in detail.

result: *Hanson v. Circuit Court of First Judicial Circuit of Illinois,* 591 F.2d 404 (7th Cir.), *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979); *Wright v. Bailey,* 544 F.2d 737 (4th Cir.1976), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977); *Russell v. City of Pierre, S.D.,* 530 F.2d 791 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Edmunds v. Won Bae Chang,* 509 F.2d 39 (9th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

The court below distinguished the fine-only rule from the present case by stressing that Spring faced imminent incarceration as a sanction for refusing to pay the fine, and that only a stay by the district court thwarted the execution of the capias. The court, relying on *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), justified its holding as follows: "Confinement is as imminent for petitioner here as it was in *Hensley.* Petitioner remains at large only by the grace of a stay issued by this Court. This is not a case of an imposition of a fine, pure and simple, nor is confinement here merely a speculative possibility." 516 F.Supp. at 1227.

It is necessary, therefore, to examine *Hensley* in order to determine whether its holding may be construed to limit the fine-only rule as developed in this and other circuits.

In *Hensley,* defendant was convicted of a misdemeanor in California Municipal Court for violation of the education code, and was sentenced to serve one year in jail, and pay a fine of $625. Subsequent to his conviction, he was released on his own recognizance. While the defendant was seeking habeas relief, the state court stayed execution of his sentence. This stay was later extended by two Justices of the Supreme Court. State law provided that upon release on his own recognizance, a defendant must give bail, and agree to the following conditions: He must appear at all times and places as ordered by the court, and any court may revoke the order of release and return him to custody. A defendant is sub-

ject to re-arrest if he fails to appear as agreed.

The Supreme Court then laid out and applied the principles upon which to decide the custody issue. First, the defendant was subject to restraints not shared by the public generally, namely, he was obliged to appear at all times and places as ordered by any court or magistrate of competent jurisdiction. Defendant could not come and go as he pleased, and his freedom of movement rested in the hands of state officials who could demand his presence at any time and without prior notice and hearing. 411 U.S. at 351, 93 S.Ct. at 1575.

Second, defendant remained at large only by virtue of a stay entered first by the state court, and then extended by Justices of the Supreme Court. The state has emphatically indicated its determination to incarcerate him, and taken every possible step to secure that result. "His incarceration is not, in other words, a speculative possibility *that depends on a number of contingencies over which he has no control.* This is not a case where the unfolding of events may render the entire controversy academic. The petitioner has been forced to fend off the state authorities by means of a stay, and those authorities retain the determination and the power to seize him as soon as the obstacle of a stay is removed." 411 U.S. at 351–52, 93 S.Ct. at 1574–75 (emphasis added).

Third, the Court noted that if it held otherwise, it would do no more than postpone the habeas action until the defendant was in jail. 411 U.S. at 352–53, 93 S.Ct. at 1575. Finally, the Court emphasized that its decision would not "open the flood gates" to all persons released on bail or on their own recognizance. Those persons would still be required to contend with the exhaustion doctrine. 411 U.S. at 353, 93 S.Ct. at 1575.

■ One analysis of *Hensley* concluded that at least one of the two restraints on liberty, or perhaps both, must be present in order to make a finding of custody: (1) There must be present some sort of supervisory control over the defendant, that is, defendant's conduct must be subject in one

degree or another to the direction of judicial officers. (2) The existence of an imminent possibility of incarceration without a formal trial and criminal conviction may create such a restraint on liberty as to constitute custody. *Whorley v. Brilhart,* 359 F.Supp. 539, 541–42 (E.D.Va.1973).

■ Applying these principles to the present case, we conclude that *Hensley* does not operate to limit the fine-only rule as developed in this and other circuits. First, supervisory control by state judicial officers is entirely lacking here. Spring is not out on bail, *Marden v. Purdy,* 409 F.2d 784 (5th Cir.1969), probation, *Helm v. Jago,* 588 F.2d 1180, 1181 (6th Cir.1979); *United States ex rel. B. v. Shelly,* 430 F.2d 215, 217–18 n. 3 (2d Cir.1970), or parole, *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Nor is Spring out on a suspended jail sentence, *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420 (3d Cir. 1975). There are no conditions or restraints on his liberty arising out of the sentence imposed upon him for violation of § 38.02. Spring was sentenced to a fine, pure and simple.

It is true that Spring had to post a habeas corpus bond in state court on November 25, 1977, while exhausting available state relief. However, since Spring appeared personally before the state judge as required by the bond, that bond was rendered null and void by its own terms prior to the filing of the federal habeas petition. We therefore cannot agree with counsel for Spring, who stated during oral argument that Spring was subject to restrictions pursuant to a bond similar to the ones imposed on the defendant in *Hensley.*[3]

The second factor outlined by the Supreme Court in *Hensley* concerns the imminent possibility of incarceration. In *Hensley,* the defendant was subject to imminent arrest (which was stayed) for violating the conditions of his release. His original sentence provided for one year's incarceration. While concluding that the defendant faced imminent incarceration, the Court stressed that "[h]is incarceration is not . . . a speculative possibility that depends on a number of contingencies *over which he has no control.*" 411 U.S. at 351–52, 93 S.Ct. at 1574–75 (emphasis added). Our case is significantly different in that the original sentence did not provide for incarceration. Furthermore, the possible incarceration here does not depend on a number of factors over which Spring has no control. On the contrary, by paying the fine, Spring will be able to avoid his incarceration altogether. He truly holds the keys to the jailhouse door.

The third factor in *Hensley* concerns the futility of postponing the habeas petition. In *Hensley,* the defendant could have properly invoked federal habeas jurisdiction by waiting until he had begun to serve his sentence. In our case, however, the rule against exercising habeas jurisdiction in fine-only cases leads us to conclude that denial of the present habeas petition will not result in mere postponement of the habeas hearing. We stress that Spring has not alleged indigency or inability to pay the fine. If he is incarcerated, it will be for his willful refusal to pay the fine.[4]

---

3. Spring cites *United States v. Gonware,* 415 F.2d 82 (9th Cir.1969) for the proposition that the stay issued by the federal district court preserved the bond as it was at the time of the issuance of the capias. *Gonware* held that a bail-bond surety was still liable during a two-day period in which execution of a jail sentence was stayed by the sentencing court. Without passing on the applicability of *Gonware* to habeas corpus proceedings, we note that on December 17, 1979, the date on which the capias was to be carried out and the date on which the district court issued its stay, the November 25, 1977 habeas corpus bond had long expired.

4. We note that our holding may be at odds with the Seventh Circuit. In *United States ex rel. Lawrence v. Woods,* 432 F.2d 1072 (7th Cir. 1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971), the defendant refused to pay a fine and was incarcerated. The court considered his habeas petition on the merits without addressing the jurisdictional issue. The Seventh Circuit apparently still adheres to this rule. *Hanson v. Circuit Court of the First Judicial Circuit,* 591 F.2d 404, 407 n. 6 (7th Cir.), *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979). There is also some language in *Edmunds v. Won Bae Chang,* 509 F.2d 39, 41 (9th Cir.), *cert. denied,* 423 U.S. 825,

We conclude that the factors outlined by the Supreme Court in *Hensley* do not justify limiting the established rule that federal courts do not have habeas jurisdiction in fine-only cases. To hold otherwise will only allow future defendants in fine-only cases to circumvent the rule and create federal habeas jurisdiction by refusing to pay their fines. It is entirely within the power of state courts to enforce their judgments through sanctions that provide for incarceration for willful refusal to pay a fine. The fine-only limitation on federal habeas jurisdiction was not intended to apply only where a defendant was fined, paid the fine, and then filed for federal habeas to recover the amount paid. It applies to all cases where a state court sentence provides for a fine, and there is no additional provision for incarceration. Thus, a specific provision for incarceration in the original sentence is necessary for the custody requirement in the federal habeas statute.[5] We hold that an arrest warrant issued for willful refusal to pay a fine does not amount to custody within the meaning of 28 U.S.C. §§ 2241 and 2254 in habeas cases challenging the constitutionality of a statute that only imposes a fine.[6]

IV. Conclusion

For the reasons mentioned above, the judgment of the court below is REVERSED and REMANDED with directions to dismiss the habeas petition.

GARWOOD, Circuit Judge, specially concurring:

Except for the single below-noted reservation, I concur in all the majority opinion,

particularly its holding as expressed in the last sentence of section III, and in the answer it gives to "the question presented" as stated in the first sentence of that section. I do not reach the question of whether the district court would have had jurisdiction if Spring had actually been incarcerated. Spring may pay his fine, as we assume he has the ability to do, or the State may collect it by levy of execution, and he may never in fact be imprisoned. *See* Texas Code of Criminal Procedure, Articles 43.-01(a) and 43.07. I see no need for a broad concept of custody when dealing with a conviction under this minor misdemeanor, fine only, statute.

96 S.Ct. 39, 46 L.Ed.2d 41 (1975), relied upon by the district court, that where confinement is imminent, and where only a stay holds off immediate incarceration, the court in some circumstances will consider the habeas petition. The court in *Edmunds* relied upon *Hensley* for this statement. However, our discussion of *Hensley, supra,* demonstrates the difference between that case and ours. In *Hensley,* the defendant was sentenced to a jail term, and then released on his own recognizance, subject to certain conditions on his liberty. Spring, on the other hand, was only sentenced to a fine. Unlike the defendant in *Hensley,* Spring has full control over whether he will be incarcerat-

ed. Thus, the "special urgency" justifying the use of the habeas remedy found in *Hensley* is lacking here.

5. Of course, our holding does not require that the defendant actually be incarcerated. The sentence providing for incarceration may be suspended, or defendant may be released on bond, on his own recognizance, put on probation, etc.

6. In cases of indigency, or inability to pay the fine, different factors must be considered. Our holding does not extend to such cases.