**Freddie SEVIER, Plaintiff-Appellant,**

v.

**Kenneth TURNER, et al.,
Defendants-Appellees.**

**No. 82–5758.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 24, 1984.

Decided Aug. 8, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 20, 1984.

George Clifton Edwards, Jr., Circuit Judge, filed opinion concurring and dissenting in part.

Wayne Chastain (argued), Memphis Area Legal Services, Inc., Memphis, Tenn., for plaintiff-appellant.

J. Minor Tait, Jr. (argued), Memphis, Tenn., for defendants-appellees.

Before EDWARDS, JONES and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

Freddie Sevier, the plaintiff, appeals from a district court judgment dismissing this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Sevier's complaint had asserted claims for habeas corpus relief under 28 U.S.C. § 2254, declaratory relief under 28 U.S.C. § 2201, injunctive relief under 42 U.S.C. § 1983 and damages under 42 U.S.C. §§ 1983 and 1985(3). For the reasons set forth below, we affirm in part, reverse in part and remand for further proceedings.

## I.

Assuming the plaintiff's factual allegations to be true, as this court must do when reviewing a district court judgment dismissing an action pursuant to Rule 12(b)(6), *see Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965), the facts in this case may be summarized as follows. Freddie Sevier, a father who is obligated to pay child support, resides in Memphis, Tennessee. Defendant Turner is a Shelby County, Tennessee Juvenile Court judge. Defendant Person is a Shelby County Juvenile Court referee who also holds the office of Tennessee state senator. Defendant Justice is a paid employee of Judge Turner and also acts as an agent of the Tennessee Department of Human Services.

Willful failure to make child support payments is a misdemeanor under Tennessee law. *See* Tenn.Code Ann. § 39–4–102. Sevier alleges that Judge Turner, under a contract with Shelby County, performs the prosecutorial function of collecting overdue child support payments from fathers within the county. With the aid of defendants Person and Justice, Judge Turner threatens to prosecute fathers who are delinquent on their support payments and extracts consent orders obligating the fathers to pay specified amounts of child support per week. Moreover, fathers failing to comply with executed consent orders are held in civil contempt. These fathers then are ordered to make "purge payments" or are incarcerated or both. Portions of the purge payments are used to pay the salaries of Turner, Person and Justice. The consent orders are extracted and the civil contempt penalties are imposed without hearings before Judge Turner. Nor are fathers informed of their rights to testify, to present evidence, to confront and cross-examine witnesses, and to have the assistance of counsel, including appointed counsel if indigent.

In the present case,[1] the plaintiff fell behind on his child support payments. On July 13, 1977, defendant Justice filed an affidavit of complaint against Sevier under Rule 3 of the Tennessee Rules of Criminal Procedure. Justice represented himself to be both an agent of the Tennessee Department of Human Services and the assignee of the rights of Sevier's wife. No arrest warrant was issued under Rule 4 of the Rules of Criminal Procedure.

The plaintiff subsequently received a letter from Justice threatening the former with arrest if he did not appear in Juvenile Court to respond to the criminal complaint. When Sevier appeared on July 20, 1977, Justice did not reveal that no arrest warrant had been issued and did not inform Sevier of the right to be represented by counsel. Instead, Justice threatened to have the plaintiff arrested and placed under a $1,000 bond if Sevier refused to sign a consent order obligating him to pay $15 per week in child support. Fearing immediate arrest, Sevier signed the order. Judge Turner later approved the consent order without a hearing.

Sevier made the child support payments until March 1981. At this time, he again fell into arrears allegedly because his new employer did not honor a wage assignment established under the consent order. In September 1981, the plaintiff was served with an order to show cause why he should not be held in civil contempt. Sevier appeared on October 2, 1981 before referee Person. Person did not advise Sevier of his right to counsel, retained or appointed. Person proceeded to adjudge the plaintiff guilty of civil contempt and sentenced him to jail until he made a $200 purge payment. In addition, Person ordered that the arrearage be paid within ten months. Judge Turner adopted Person's recommendation without a hearing.

Since Sevier was unable to make the purge payment, he spent sixteen days in jail. His employer discharged him during

---

**1.** Although the plaintiff presents this case as if it were a class action, no class allegations are present in the complaint and no class has been certified. Thus, this case only involves the question of whether Sevier has stated a claim upon which individual relief can be granted.

this time period for absenteeism. Shortly after the plaintiff was released, he again received a notice ordering him to appear before the Juvenile Court to show cause why he should not be held in contempt.

Mr. Chastain of Memphis Area Legal Services represented Sevier at the second civil contempt hearing which occurred on February 18, 1982.[2] Since the thirty-day period in which to appeal from the October 2, 1981 contempt order had lapsed, Chastain moved the Juvenile Court, William Ingram presiding, to vacate both the contempt order and the original consent order. Ingram denied the motions and issued an arrest warrant.

Sevier then appealed to the Tennessee Court of Appeals via Rule 10 of the Tennessee Rules of Appellate Procedure. This rule empowers Tennessee appellate courts, in their discretion, to hear extraordinary appeals from interlocutory orders of lower Tennessee courts where the lower courts have "so far departed from the accepted and usual course of judicial proceedings as to require immediate review ...." The Court of Appeals declined to hear the case through an order which read in its entirety:

> The appellant's application for extraordinary appeal under rule 10, T.R.A.P. is denied. Cost in this court is adjudged against the appellant. Enter: March 30, 1982.

Sevier then appealed to the Tennessee Supreme Court, which also refused to hear the case. The court's order read in full:

> The Motion to Correct Error in Application for Permission to Appeal filed by the Defendant-Appellant is granted.

The Court has considered the application for permission to appeal filed by the Appellant and the answer of the Appellee, the briefs of counsel and the entire record and is of the opinion that the application should be and the same is hereby denied.

Costs will be borne by the Appellant.

After the Tennessee Supreme Court issued its decision, and while the arrest warrant remained in effect,[3] the plaintiff filed his complaint in the district court. In the prayer for relief, Sevier first asked that both the July 1977 consent order and the October 1981 civil contempt order be voided. Second, Sevier requested a declaration that when ordered to appear at future contempt hearings involving failure to pay child support, he is entitled to testify, to present evidence, to confront and cross-examine witnesses, and to have the assistance of counsel (including appointed counsel if indigent).[4] Third, the plaintiff requested an order enjoining the defendants from violating the above enumerated rights. Finally, Sevier requested compensatory damages for lost wages, punitive damages and attorney's fees. The district court granted the motion as to all defendants under the doctrine of judicial immunity. It is from this judgment that the plaintiff appeals.

## II.

The plaintiff's primary claim is that he was entitled to be informed of the right to counsel, and to have counsel appointed if he were indigent, both at the October 1981 civil contempt hearing and during the July 1977 meeting with defendant Justice at which the consent order was

---

**2.** The record does not indicate how the plaintiff became aware of Mr. Chastain and Memphis Area Legal Services or under what arrangement Mr. Chastain agreed to represent the plaintiff.

**3.** The plaintiff has acknowledged that the Juvenile Court subsequently vacated the arrest warrant.

**4.** Although Sevier alleges indigence in paragraphs 15 and 21 of the complaint, it is unclear whether he claims to have been indigent all of the time or only some of the time during the period covered by the complaint. This uncer-

tainty is unimportant for purposes of this opinion, however. The plaintiff's position is that regardless of whether or not he was indigent, he was entitled to be informed of the right to counsel both when the July 1977 consent order was signed and when the October 1981 civil contempt hearing was held. The plaintiff further claims that he was entitled to be informed of the right to appointed counsel if indigent; the Juvenile Court personnel could not know whether the plaintiff was indigent unless they inquired about the matter.

signed. Since Sevier was incarcerated for sixteen days as a result of the civil contempt hearing, he was entitled to have the assistance of counsel during that proceeding. *See Lassiter v. Department of Social Services,* 452 U.S. 18, 25–26, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640 (1981); *Mastin v. Fellerhoff,* 526 F.Supp. 969 (S.D. Ohio 1981); *Young v. Whitworth,* 522 F.Supp. 759 (S.D.Ohio 1981). As indicated by the Supreme Court in *Lassiter,* the relevant question in determining if a defendant is entitled to counsel during this type of contempt proceeding is not whether the proceeding be denominated civil or criminal, but rather is whether the court in fact elects to incarcerate the defendant.

■ Whether the plaintiff was entitled to the assistance of counsel during the meeting with defendant Justice presents a more difficult question. Sevier contends that he signed the consent decree in order to avoid being arrested and prosecuted for willful failure to pay child support. Although the consent order is a civil judgment, the order resulted from a discussion between the plaintiff and defendant Justice about the affidavit of complaint that had been filed under Tennessee Rule of Criminal Procedure 3.

The plaintiff presents two theories to support his claim that he was entitled to the assistance of counsel during his meeting with Justice. First, he argues that in filing the affidavit of complaint, Justice initiated adversary judicial criminal proceedings on behalf of the state within the meaning of *Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–64, 54 L.Ed.2d 424 (1977); *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972) (plurality); and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Those cases stand for the proposition that once adversary judicial criminal proceedings have commenced, the sixth amendment right to counsel attaches. Since the affidavit of complaint was filed before Sevier was ordered to meet with

Justice, Sevier contends that he was entitled to have counsel present during the meeting.

Although the Supreme Court has not squarely addressed the issue of whether courts should look to federal or state law in order to determine when a state judicial criminal proceeding has commenced for purposes of *Massiah* and its progeny, language in two Supreme Court opinions nevertheless suggests that state law controls. *See Edwards v. Arizona,* 451 U.S. 477, 480–82 n. 7, 101 S.Ct. 1880, 1883 n. 7, 68 L.Ed.2d 378 (1981); *Moore,* 434 U.S. at 228, 98 S.Ct. at 464. The Tennessee appellate courts have held that adversary judicial criminal proceedings are initiated when a magistrate issues an arrest warrant based upon information contained in an affidavit of complaint. *State v. Mitchell,* 593 S.W.2d 280, 286–87 (Tenn.), *cert. denied,* 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980); *State v. Baker,* 623 S.W.2d 132, 133 (Tenn.Cr.App.1981); *State v. Beal,* 614 S.W.2d 77, 81 (Tenn.Cr.App.1981).[5] Since no arrest warrant was issued in the present case before the plaintiff met with Justice, Sevier was not entitled to the assistance of counsel under a *Massiah* sixth amendment theory.

The plaintiff's second theory is that defendant Justice, functioning as a prosecutor, subjected him to custodial interrogation in connection with the criminal complaint. Sevier contends, therefore, that he was entitled to counsel in order to protect his fifth amendment privilege against self-incrimination. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ With regard to the "custody" element, this court has held that whether a person is in custody depends upon the totality of the circumstances in the individual's case. *See United States v. Harris,* 611 F.2d 170, 172 (6th Cir.1979). The Supreme Court has defined custody as a "formal arrest or restraint on freedom of move-

---

5. The information in the affidavit of complaint must be sufficient to establish probable cause

before an arrest warrant will issue. *See* Rule 4 of the Tennessee Rules of Criminal Procedure.

ment of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983). A "restraint on freedom of movement of the degree associated with a formal arrest" exists where a person has been "deprived of his freedom of action in any significant way." *Id.* 103 S.Ct. at 3519; *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977).

■ We hold that if the plaintiff's factual allegations are true, then he was in custody under the *Beheler-Mathiason* test. Sevier was informed that he would be arrested if he did not appear before the Juvenile Court. During the meeting with Justice, he was told that he would be arrested before leaving the building if he did not sign the consent order. These alleged facts contrast sharply with those in *Beheler* and *Mathiason* where the defendants voluntarily appeared, were neither placed under arrest nor threatened with arrest, and were free to leave unhindered by the authorities.

We emphasize that whether a person is in custody depends upon the facts of each case. The result may have been different here, for instance, had the plaintiff not alleged that Justice threatened him with arrest both in the letter demanding that he appear and during the ensuing meeting. The Supreme Court has clearly stated that the mere location of an interview and the fact that an investigation has focused upon a particular person, without more, will not support a finding of custody. *Beheler*, 103 S.Ct. at 3519 n. 2, 3520. Our holding that the plaintiff has sufficiently alleged that he was in custody is limited to the facts of this case.

The second element that must be alleged under the *Miranda* theory is that the plaintiff underwent interrogation. Any words or actions on the part of defendant Justice that he should have known would be reasonably likely to elicit an incriminating response from Sevier would constitute interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Again assuming the plaintiff's factual allegations to be true, it is possible that Justice's threat to have Sevier arrested was an act that Justice should have known was reasonably likely to elicit an incriminating response under the totality of the circumstances. Although the plaintiff has not alleged in detail what transpired between Justice and himself, we certainly cannot say that it appears beyond doubt that Sevier can prove no set of facts establishing that he was interrogated. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Consequently, we hold that the plaintiff has adequately alleged that he was subjected to custodial interrogation in connection with a criminal complaint filed by a state official acting in the role of a prosecutor and, therefore, that he was entitled to the assistance of counsel when he met with that official in July 1977. We express no view, of course, on whether the plaintiff will actually be able to prove on remand that he underwent custodial interrogation and was entitled to counsel.

### III.

Assuming that the plaintiff's right to counsel was violated, the next inquiry for purposes of Rule 12(b)(6) is what, if any, relief is available. Sevier initially requests that both the 1977 consent order and the 1981 civil contempt order be vacated under 28 U.S.C. § 2254. We hold that habeas corpus relief is unavailable because the plaintiff has not established that he was in custody within the meaning of 28 U.S.C. §§ 2241 and 2254.

■ Whether a habeas corpus petitioner is in custody for purposes of §§ 2241 and 2254 is determined at the time that the complaint is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). Although a petitioner's release from custody subsequent to the filing of the complaint may render his

case moot,[6] such a release does not affect the custody question. Moreover, the term "custody" is not limited solely to physical confinement. *See, e.g., Spring v. Caldwell,* 692 F.2d 994, 996 (5th Cir.1982); *Duvallon v. Florida,* 691 F.2d 483, 484 (11th Cir.1982); *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1533, 75 L.Ed.2d 953 (1983); *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420, 423 (3d Cir.1975). For instance, persons on parole, probation or bail may be in custody for purposes of §§ 2241 and 2254. *See, e.g., Duvallon,* 691 F.2d at 485; *Hopkins,* 517 F.2d at 423–24.

[redacted] The record reflects that the plaintiff filed his complaint on July 16, 1982. At this time, Sevier was subject (and remains subject) to the 1977 consent order. This civil judgment requiring him to pay child support does not, however, constitute custody. If a fine imposed in a criminal case does not create custody for purposes of §§ 2241 and 2254, *see, e.g., Spring,* 692 F.2d at 996–97 (cases collected), then neither does a civil money judgment.

The record further discloses that Sevier's incarceration resulting from October 1981 civil contempt hearing had ended well before July 16, 1982. Nor was the plaintiff subject to parole, probation, bail or any other indicia of custody pursuant to the October 1981 civil contempt order when the complaint in this case was filed. Since the plaintiff was in custody of neither of the juvenile court orders that he seeks to have vacated as of July 16, 1982, *see Ward v. Huron County Circuit Judge Knoblock,* 738 F.2d 134 at 137–138 (6th Cir.1984), this court lacks jurisdiction to grant habeas corpus relief.[7]

## IV.

[redacted] We next consider the plaintiff's claim for injunctive and declaratory relief. The Supreme Court has recently decided that the doctrine of judicial immunity does not protect state judicial officers such as Turner, Person and Justice from suits for injunctive relief. *See Pulliam v. Allen,* — U.S. —, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Since the defense of judicial immunity is unavailable to the defendants regarding the declaratory and injunctive relief claims, we proceed to address their argument that this court's opinion in *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980), requires the federal courts to abstain from granting either declaratory or injunctive relief under the facts of this case.

Like the present case, *Parker* involved Tennessee fathers who had been held in civil contempt for willfully failing to pay child support and who had not been informed of the rights to retained or appointed counsel, to testify, to present evidence and to confront and cross-examine witnesses. Moreover, both cases involved complaints for prospective relief to ensure that certain rights would be afforded in future

6. The issues of custody and mootness are distinct. *See, e.g. Ward v. Huron County Circuit Judge Knoblock,* 738 F.2d 134 at 138 (6th Cir. 1984); *Malloy v. Purvis,* 681 F.2d 736, 738 n. 1 (11th Cir.1982), *cert. denied,* 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983); *Harrison v. State of Indiana,* 597 F.2d 115, 117–18 (7th Cir. 1979).

7. Sevier also argues that on the date that the complaint in this case was filed, he was subject to arrest under the warrant issued by the Juvenile Court on February 18, 1982. He implies that being subject to immediate arrest pursuant to an arrest warrant constitutes custody.

In his prayer for relief, however, the plaintiff did not seek to have the arrest warrant vacated. Moreover, even if being subject to immediate arrest pursuant to an arrest warrant creates a custody situation, a question which we do not reach, that fact would not benefit the plaintiff. If the plaintiff were in custody under the arrest warrant when the complaint was filed, the claim would nevertheless be moot because the arrest warrant has been withdrawn. Sevier has identified no adverse collateral consequences attaching to his former status as the subject of an arrest warrant. He does not contend, for instance, that his having been the subject of an arrest warrant will prevent him from voting, serving as a juror, engaging in certain types of businesses or becoming a union official. *See Carafas,* 391 U.S. at 237, 88 S.Ct. at 1559. Since the plaintiff has not alleged any possibility that adverse collateral consequences will result from his former status as the subject of an arrest warrant, the arrest warrant claim is moot. *See Sibron v. New York,* 392 U.S. 40, 54–57, 88 S.Ct. 1889, 1898–1900, 20 L.Ed.2d 917 (1968).

civil contempt proceedings. Under these circumstances, the *Parker* court held that the federal courts, absent "extraordinary circumstances," must abstain from granting declaratory or injunctive relief because doing so would involve unduly intrusive interference with, and monitoring of, the day-to-day conduct of state hearings and trials. 626 F.2d at 7–8. Since *Parker* is the rule of this circuit, we are required to abstain unless extraordinary circumstances now exist that were not present when *Parker* was decided.

In *Parker,* this court stated:

Should the Tennessee appellate courts be unable or unwilling to correct continuing unconstitutional conduct by the juvenile court judges, plaintiffs would then be in a position of showing "exceptional circumstances" which would warrant federal injunctive [or declaratory] relief.

626 F.2d at 10. The plaintiff alleges two examples of the Tennessee appellate courts' unwillingness to afford constitutional rights to fathers who are required to appear at civil contempt hearings for failure to pay child support. First, in *Davenport v. Jailer, City of Memphis,* 572 S.W.2d 265 (Tenn.App.1978), the Tennessee Court of Appeals held that fathers who are incarcerated after civil contempt hearings for failure to pay child support need not be informed of the right to counsel prior to the hearing. Since *Davenport* was decided before *Lassiter,* however, the decision does not demonstrate that the Tennessee appellate courts are unable or unwilling to enforce an established right to counsel possessed by persons like Sevier. Moreover, *Davenport* also was decided before *Parker.* In *Parker,* this court held that the right to appointed counsel in civil contempt proceedings was unsettled. 626 F.2d at 2 n. 2. This is further evidence that the Tennessee Court of Appeals did not indicate an unwillingness in *Davenport* to enforce an established right to counsel. Finally, the *Parker* court also was convinced two years after *Davenport* that:

[T]here is no reason to believe that Tennessee's appellate courts would tolerate summary and indiscriminate jailing of indigent fathers. On the contrary, Tennessee's appellate courts have long required that a fair hearing be conducted in contempt cases . . . . [Citations omitted.]

626 F.2d at 9. Hence, we conclude that Sevier's reliance upon *Davenport* is misplaced.

Second, the plaintiff argues that the refusal by both the Tennessee Court of Appeals and the Tennessee Supreme Court to hear his Rule 10 extraordinary appeal demonstrates that the Tennessee courts are unwilling to enforce his constitutional rights. This argument is flawed, however, because the Tennessee appellate courts may have declined to hear the extraordinary appeal for procedural reasons rather than on the merits.

Rule 10 of the Tennessee Rules of Appellate Procedure by its terms applies only to interlocutory orders. Although the parties have cited no Tennessee authority, and we have found none, defining what is an interlocutory order for purposes of a Rule 10 extraordinary appeal, the July 1977 consent order, the October 1981 civil contempt order and the order denying the motions to vacate appear to be final orders rather than interlocutory orders. The parties agree, for instance, that Sevier could have directly appealed both after the civil contempt order was entered and after Judge Ingram denied the motions to vacate, but that he failed to do so. It is extremely unlikely that a direct appeal would have been provided if the civil contempt order and the order denying the motions to vacate were not final orders. Thus, the Tennessee appellate courts may have refused to hear the extraordinary appeal because no interlocutory order was involved.

Furthermore, it is undisputed that Sevier did not appeal to the Circuit Court after the civil contempt order and the order denying the motion to vacate were entered. A Tennessee statute and Tennessee case law clearly provide that an appeal from the Juvenile Court lies to the Circuit Court rather than to the Tennessee Court of Appeals. *See* Tenn.Code Ann. § 16–10–112;

*Doster v. State,* 195 Tenn. 535, 537, 260 S.W.2d 279 (1953); *State v. Bockman,* 139 Tenn. 422, 201 S.W. 741 (1917); *State v. Womack,* 591 S.W.2d 437, 441 (Tenn.App. 1979). Consequently, the Tennessee appellate courts may have declined to adjudicate Sevier's extraordinary appeal because those courts did not wish to encourage litigants to circumvent the normal appellate process.

We acknowledge that the orders of the Tennessee appellate courts do not reflect the grounds upon which those courts refused to hear the plaintiff's extraordinary appeal. The plaintiff, however, bears the burden of proving that the state appellate courts have exhibited an unwillingness in this case to enforce his constitutional rights. *See Parker,* 626 F.2d at 10. Sevier has not shown that the Tennessee appellate courts did not rely, or could not have relied, upon the two procedural grounds already discussed. Since the plaintiff has not demonstrated the presence of "extraordinary circumstances" as that term is defined in *Parker,* the federal courts must abstain from deciding his claims for declaratory and injunctive relief.

### V.

The plaintiff's final claim is that he is entitled to damages.[8] The district court held that the doctrine of judicial immunity precluded any award of damages against the defendants. We disagree and remand the case, subject to our comments in Part VI of this opinion, for further proceedings on the damages claim.

 The general rule is that judicial officers are entitled to immunity from suits for damages. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). Nevertheless, judicial officers may be liable for damages if they act in the "clear absence of all jurisdiction," *id.* at 357, 98 S.Ct. at 1105, or if they engage in nonjudicial acts. *Id.* at 360, 98 S.Ct. at 1106. Sevier initially contends

that by not informing him of his constitutional rights, Judge Turner and his staff acted in the clear absence of all jurisdiction. The plaintiff relies upon language in *Johnson v. Zerbst,* 304 U.S. 458, 467–68, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938), to the effect that if a person is entitled to the assistance of counsel and none is provided, then the court lacks jurisdiction to proceed.

 This reading of the phrase "clear absence of all jurisdiction" is faulty for two reasons. First, a judicial officer does not act in the clear absence of all jurisdiction if he merely acts in excess of his authority. *See Stump,* 435 U.S. at 356, 98 S.Ct. at 1104; *Rankin v. Howard,* 633 F.2d 844, 849 (9th Cir.1980), *cert. denied sub nom. Zeller v. Rankin,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d (1981). The Supreme Court has held, for instance, that if a judicial officer exceeds his authority in a type of case that he normally has jurisdiction to hear, the officer has not acted in the clear absence of all jurisdiction. *See Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7; *see also Lopez v. Vanderwater,* 620 F.2d 1229, 1234 (7th Cir.), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). Although the defendants in this case may have exceeded their authority in persuading Sevier to sign the consent order and in incarcerating him after the civil contempt hearing without the assistance of counsel, the defendants were empowered to handle Juvenile Court cases. The defendants, therefore, did not act in the clear absence of all jurisdiction.

Second, the Supreme Court has specifically held that the commission of grave procedural errors, including those involving due process, does not constitute judicial action taken in the clear absence of all jurisdiction. *See Stump,* 435 U.S. at 359, 98 S.Ct. at 1106; *see also Lopez,* 620 F.2d at 1234. Although the defendants may have been guilty of grave procedural error in not informing the plaintiff of his consti-

---

**8.** The parties have also briefed the issue of whether attorney's fees may be recovered from the defendants. Since the plaintiff will be enti-

tled to attorney's fees, if at all, only if he prevails on remand, we decline to address this issue now.

tutional rights, this mistake does not render them liable for damages.

 The plaintiff has adequately alleged, however, that each of the defendants in effect undertook prosecutorial duties that constituted nonjudicial acts. As has been indicated, Sevier contends that pursuant to a contract with Shelby County, Judge Turner is responsible for collecting overdue child support payments. In order to discharge this responsibility, Turner allegedly instructs staff members such as · Justice to initiate criminal prosecutions against fathers who are in arrears on their payments. The impending prosecutions are then used as leverage to extract signatures on consent orders that are approved by Judge Turner without hearings. Furthermore, with the aid of defendant Person, Judge Turner initiates civil contempt proceedings against those fathers who do not remain current on their payments under the consent orders. These fathers are either incarcerated or are required to make purge payments out of which Turner, Person and Justice receive part of their salaries.

We hold that the defendants' involvement in initiating both the criminal prosecution and the civil contempt proceeding against Sevier, if proven, would constitute nonjudicial acts exposing them to liability for resulting damages. The test to be applied is whether initiating accusatory processes such as criminal prosecutions or civil contempt proceedings is a function normally performed by a judicial officer. *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107. We conclude that it is not. *Cf. In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (judge initiates prosecution by acting as one-man grand jury); *Lopez,* 620 F.2d at 1235 (judge selects and prepares the criminal charge and prepares the guilty plea form).[9]

**9.** We emphasize, however, that if judicial officers engage in both judicial and nonjudicial acts, they may only be held liable for those damages caused by their nonjudicial acts. *See Lopez,* 620 F.2d at 1234–36.

## VI.

Defendants Turner and Justice also raise the affirmative defense of the statute of limitations in response to the plaintiff's § 1983 damages claim.[10] The complaint alleges that all acts performed by Turner and Justice in connection with the signing of the consent order occurred in July 1977. The complaint was filed on July 16, 1982. Turner and Justice contend that a one-year statute of limitations bars any § 1983 claim for damages arising from events occurring in July 1977. We agree.

Since § 1983 contains no statute of limitations, this court must refer to the limitations period that applies to the most closely analogous Tennessee action. *See Kilgore v. City of Mansfield, Ohio,* 679 F.2d 632, 633–34 (6th Cir.1982); *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520, 521 (6th Cir.1975). The most closely analogous Tennessee action is a civil action "for compensatory or punitive damages, or both, brought under the federal civil rights statutes...." Tenn.Code Ann. § 28–3–104. The limitations period for such actions is one year. *Id.* Consequently, the plaintiff's § 1983 claim for damages against Turner and Justice for acts occurring in July 1977 is barred by the statute of limitations.

The plaintiff attempts to escape this conclusion by contending that the limitations period did not begin to run until Mr. Chastain informed him in December 1981 that he possessed a federal claim. Since the complaint was filed in July, 1982, Sevier asserts that his claim was timely brought.

 This argument is unmeritorious. Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run. *Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983); *Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983); *Gowin v. Altmiller,* 663 F.2d

**10.** The defendants do not argue that the statute of limitations defense applies to the § 1985(3) claim.

820, 822 (9th Cir.1981); *Bireline v. Seagon-dollar,* 567 F.2d 260, 263 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979).[11] The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. *See Keating,* 706 F.2d at 382; *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1981); *Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir.1980); *Bireline,* 567 F.2d at 263. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Cf. Briley v. State of California,* 564 F.2d 849, 855 (9th Cir.1977) (due diligence standard applied to discovery of fraudulent misrepresentation or concealment of facts in § 1983 action); *Herm v. Stafford,* 663 F.2d 669, 682 (6th Cir.1981) (due diligence standard applied to discovery of injury rule in federal securities cases).

Sevier has alleged no misrepresentation or concealment of fact that he could not have become aware of through the exercise of reasonable diligence. *Compare Briley,* 564 F.2d 849. Instead, he simply appears to have been ignorant of the right to counsel and other legal rights. We hold that for purposes of a civil damages claim, the plaintiff had reason to know that his legal rights were being violated when the defendants extracted his signature to the consent order in July 1977. A person exercising reasonable diligence would expeditiously attempt to determine the validity of a legal document signed in response to threats of criminal prosecution and would not wait over four years before initially consulting legal counsel about the matter. To hold that a statute of limitations does not begin to run until a plaintiff happens to consult counsel would extend the limitations period indefinitely, thereby defeating the purpose of the statute of limitations. Accordingly, we conclude that the limita-

tions period on the claim for damages arising from the events surrounding the signing of the consent order began to run on July 20, 1977 rather than in December 1981.[12]

## VII.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceedings consistent with this opinion.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur in Judge Contie's opinion except for Section IV thereof. As to Section IV, I cannot agree that federal abstention is appropriate in this case. As the majority opinion recognizes, the Supreme Court has recently held that the doctrine of judicial immunity does not bar injunctive relief. *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

Appellant has, in my view, also alleged "extraordinary circumstances" which, if established at hearing, would involve federal constitutional violations. Among these are failure of the Tennessee judge to advise him of his right to counsel before a hearing which has resulted and could result in his further incarceration. Unlike the plaintiff in *Parker v. Turner,* 626 F.2d 1 (6th Cir. 1980), this appellant did seek the only relief realistically available to him in state appellate court, which denied his claim.

The federal court exists to protect individual citizens' rights under the federal constitution and laws as this court held in a case involving juvenile detention, *Hanna v. Toner,* 630 F.2d 442 (6th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981).

The federal courts were created to vindicate the constitution and laws of the United States, *Bivens v. Six Unknown*

---

**11.** *See also Fiesel v. Board of Education,* 675 F.2d 522, 524 (2d Cir.1982); *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1981); *Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir.1980); *Briley v. State of California,* 564 F.2d 849, 855 (9th Cir.1977).

**12.** This holding does not affect the plaintiff's § 1983 claim for damages against Turner and Person in connection with events occurring in October 1981 and thereafter.

*Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Marbury v. Madison,* 1 Cranch 137, 163, 177, 2 L.Ed. 60 (1803). The rule, of course, is that their doors are open to complaints of violation of such laws. Exceptions to that rule are few and narrowly drawn. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959).